UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROLAND ROYAL,

                    Plaintiff,

          v.

NORTHERN TRUST CORPORATION,

                    Defendant.

CASE NO. 3:25-cv-06123-BHS

ORDER

THIS MATTER is before the Court on defendant Northern Trust Corporation's motion to dismiss, Dkt. 13, pro se plaintiff Roland Royal's amended complaint, Dkt. 11.

Royal is African American and brings race-based employment discrimination claims against Northern Trust, his former employer. Dkt. 11 at 4.

Royal worked from 2023 to 2025 in Northern Trust's Seattle wealth management office as a Senior Account Manager. In March 2024, he met with his supervisor to "question[] why his work ethic and seriousness were being challenged." *Id.* at 2. He believed he was "treated differently" as the "only Black male in the Seattle office." *Id.*

Royal alleges he experienced several workplace changes after that meeting. First, his supervisor's support and engagement decreased. Then, in October 2024, Northern

ORDER - 1

Trust informed him that his position was "being eliminated due to restructuring and that [his] employment would terminate effective December 27, 2024." *Id.* at 3. After Royal experienced a medical emergency and received short-term disability leave, Northern Trust extended his termination date to February 15, 2025. *Id.* Royal left Northern Trust on that date.

On February 18, 2025, Northern Trust sent Royal a waiver and release agreement in exchange for its severance package. Dkt. 13-2. He signed on April 16. *Id.* He agreed to release Northern Trust from all claims, including those based on "race discrimination . . . arising from Title VII of the 1964 Civil Rights Act," and that he was "aware of [his] right to consult an attorney before signing" the document. *Id.* at 4, 8. The agreement did not preclude Royal from filing a complaint with the Equal Employment Opportunity Commission (EEOC), but barred recovery based on any related claims. *Id.* at 5. The agreement's choice of law clause provided it "shall be governed by and construed in accordance with the laws of Illinois except to the extent that Federal law applies." *Id.* at 8.

In September 2025, Northern Trust announced that another employee had been promoted to Senior Account manager. Dkt. 11 at 3. Royal contends the role is "substantially similar" to his former role, and "supports a plausible inference that [his] position was not permanently eliminated and that the role continued to exist in the Seattle office." *Id.* at 4.

He filed a charge of discrimination with the EEOC on September 17, 2025, and two days later, it issued him a Notice of Right to Sue. *Id.* at 5.

ORDER - 2

Royal brings Title VII race discrimination and retaliation claims against Northern Trust. *Id.* at 4.

Northern Trust moves to dismiss Royal's complaint under Fed. R. Civ. P. 12(b)(6).[1] Dkt. 13. It argues his claims are time-barred because he did not file an EEOC charge within 300 days of his notice of termination. *Id.* at 4–6 (citing *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628 (2007)). It also argues the severance agreement is enforceable and precludes his claims. *Id.* at 7.

Royal responds that he states plausible Title VII claims and his pleadings should be construed liberally because he is pro se. Dkt. 14 at 4–5. He argues he filed the EEOC charge within 300 days of February 15, his last day at Northern Trust, which should serve as the date of the unlawful employment action. Dkt. 14 at 2 (citing *Green v. Brennan*, 578 U.S. 547, 555-56 (2016)). He argues the Court should defer ruling on the severance agreement's validity because it is a fact-intensive inquiry. *Id.* at 3. He emphasizes the agreement allowed him to pursue complaints with EEOC, so "whether the release encompasses those allegations requires factual development." *Id.*

The issues are addressed in turn.

## I.   DISCUSSION

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

---

[1] Northern Trust also moved to dismiss Royal's first-filed complaint. Dkt. 10. Because Royal has amended his complaint, Dkt. 10 is DENIED as moot.

1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although courts must accept as true the complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, when the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law, courts may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

ORDER - 4

Pro se litigants are not held to the same standard as admitted or bar licensed attorneys. *Haines v. Kerner,* 404 U.S. 519, 521 (1972). A pro se litigant's pleading, regardless of deficiencies, should be judged only by function, not form. *Id.* Nonetheless, a pro se plaintiff is not entirely immune from the rules of civil procedure. Although the Court must construe the pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, 925–28 (9th Cir. 2012); *accord Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."); *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986) ("[P]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record.").

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq.*; *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). It covers both "intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Id.*

**A.      Royal's Title VII claims are time-barred.**

Title VII generally requires a complainant to file with the EEOC within 180 days from the time of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). Where they file "with a State or local agency with authority to grant or seek relief from

such practice," including Washington, the limitations period is extended to 300 days. *Id.*; *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 109 n.1 (2002); 29 C.F.R. §§ 1601.71, .80.

An unlawful employment practice occurs "when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A). The "discrete unlawful practice" triggers the EEOC charging period, rather than the "subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act, Pub. L. No. 111–2, 123 Stat. 5.[2] On the other hand, a subsequent independently discriminatory act constitutes a fresh violation that resets the clock. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *St. Clair*, 154 F.4th at 1158.

For example, in *Delaware State Coll. v. Ricks*, a college professor alleged he was denied tenure because of his national origin and then offered a "1-year 'terminal' contract.'" 449 U.S. 250, 254 (1980). The plaintiff argued he suffered a "continuing violation" such that the EEOC limitations period should begin to run after he was discharged, at the end of the 1-year contract. *Id.* at 257. The Court disagreed, ruling that the clock began when the "tenure decision was made and communicated" to him. *Id.* at

---

[2] Even in view of the Act, *Ledbetter*'s principles still hold. *See, e.g., Green*, 578 U.S. at 569 n.3 (Alito, J., concurring) (the Act "did not disturb the reasoning of the precedents on which *Ledbetter* was based"); *Lewis v. City of Chicago*, 560 U.S. 205, 214 (2010) (citing *Ledbetter*, 550 U.S. 618); *St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154, 1158 (9th Cir. 2025) (same).

ORDER - 6

258. His complaint alleged only one instance of discrimination—the denial of tenure—and "[m]ere continuity of employment, without more," could not toll the limitations period. *Id.* at 257–58. On the other hand, had the plaintiff alleged the "manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure," his discharge would have triggered the limitations period instead. *Id.* at 258.

Royal claims, at most, two discrete discriminatory practices. His complaint alleges: (1) his interactions with his supervisor decreased after he raised "concerns about discriminatory treatment"; and (2) on October 29, 2024, Northern Trust informed him that his position was being eliminated. Dkt. 11 at 3. His last day working at Northern Trust, February 15, 2025, is necessarily an "adverse effect" of the alleged notice of termination on October 29. *Ledbetter*, 550 U.S. at 628. Much like in *Ricks*, his delayed termination is not an independent discriminatory event and has no bearing on the EEOC clock. The limitations period began on October 29, 2024, when the termination "decision was made and communicated to him." *Ricks*, 449 U.S. at 258. Royal had 300 days from that date, until August 25, 2025, to file the EEOC charge. He did so several weeks later. Royal's claims are time-barred.

**B.      Royal does not allege the severance agreement is unenforceable.**

Generally, public policy favors the voluntary settlement of Title VII employment discrimination claims. *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 460–61 (9th Cir. 1989). A release of a plaintiff's right to bring Title VII claims is valid if it is

"voluntary, deliberate, and informed," dependent on the "circumstances and conditions under which the release was executed." *Id.* at 462 (citation modified).[3]

Royal simply argues the Court should not decide the agreement's validity at this stage because it is a question of fact. Dkt. 14 at 3–4. He does not explain why in his view the agreement is unenforceable.

A Rule 12(b)(6) motion to dismiss tests the plausibility of the plaintiff's allegations, not the sufficiency of his evidence. *See Mangiaracina v. Penzone*, 849 F.3d 1191, 1198 (9th Cir. 2017); *Laatz v. Zazzle, Inc.*, 682 F.Supp.3d 791, 806 (N.D. Cal. 2023). The Court construes the complaint most favorably to the non-moving party, but accepts all well-pleaded factual allegations as true. *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 677 F. Supp. 3d 1079, 1083 (N.D. Cal. 2023) (citing *Iqbal*, 556 U.S. at 664). The only question at this juncture is whether Royal's Title VII claims are plausible.

The complaint does not allege any factual concerns about the release, nor does Royal dispute Northern Trust's account of the circumstances in which he signed. Dkts. 11 and 14. He received consideration for the release through his severance package, had close to two months to review the contract, and was aware of his right to legal counsel before he signed. Dkt. 13-2. Royal has not plausibly alleged the agreement is unenforceable.

---

[3] The Ninth Circuit has held that the "validity of a release of claims under Title VII is governed by federal law." *Stroman*, 884 F.2d at 461. While the severance agreement selected Illinois law to govern the contract, it also carved out an exception "to the extent that Federal law applies." Dkt. 13-2 at 8.

**C.      Royal may amend his complaint.**

Leave to amend a complaint under FRCP 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). This policy is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Cap.*, 316 F.3d at 1052.

Allowing Royal to amend his complaint would not prejudice Northern Trust, nor is there any claim or evidence of bad faith or undue delay. It would not necessarily be futile for Royal to amend his claims to address the deficiencies described in this Order. Although Royal has already amended his complaint as a matter of right, the Court will permit him one more opportunity to do so.

Northern Trust's motion to dismiss, Dkt. 13, is therefore **GRANTED**, but Royal **may amend his complaint** to address and remedy these pleading defects. He should do so by May 22, 2026.

IT IS SO ORDERED.

//

//

//

Dated this 27th day of April, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 10